## In re FRISTOE.

Court of Claims of Ohio,
Victims of Crime Division.

No. V91–20760.

Decided March 18, 1994.

*Thaddeus Allen Muething,* for applicant Teresa Buxsel Fristoe.

*Lee Fisher,* Attorney General, for the state.

OPINION OF THREE-COMMISSIONER PANEL.

This cause came to be heard before this panel of three commissioners on July 7, 1993 at 2:00 p.m. upon the applicant's January 27, 1993 objection and notice of appeal to the January 12, 1993 decision of the single commissioner. The single commissioner had denied the applicant's claim pursuant to R.C. 2743.52(A) because the single commissioner found the applicant did not qualify as a victim of "criminally injurious conduct" as defined in R.C. 2743.51(C)(1). The applicant, counsel for the applicant, and the Attorney General attended the hearing and presented testimony and oral argument for this panel's review and consideration.

R.C. 2743.52(A) places the burden of proof upon the applicant to satisfy the Court of Claims Commissioners that the requirements for an award of reparations have been met by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc.2d 4, 8 OBR 63, 455 N.E.2d 1374, paragraph one of the syllabus. Black's Law Dictionary defines "preponderance of evidence" as follows:

"Evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. Braud v. Kinchen, La.App., 310 So.2d 657, 659. With respect to burden of proof in civil actions, means greater weight of evidence, or evidence which is more credible and convincing to the mind. That which best accords with reason and probability. The word 'preponderance' means something more than 'weight'; it denotes a superiority of weight, or outweighing. The words are not synonymous, but

substantially different. There is generally a 'weight' of evidence on each side in case of contested facts. *But juries cannot properly act upon the weight of evidence, in favor of the one having the onus, unless it overbear, in some degree, the weight upon the other side."* (Emphasis added.) Black's Law Dictionary (5th Ed.1979) 1064.

Ordinarily, a *prima facie* claim is made when the applicant files an application in accordance with R.C. 2743.56 and submits such additional material, information, and evidence as required by R.C. 2743.59. *In re Williams* (Mar. 26, 1979), Ct. of Cl. No. V77–0739jud, unreported.

■ R.C. 2743.51(C)(1) defines "criminally injurious conduct," in pertinent part, as follows:

"(C) 'Criminally injurious conduct' means either of the following:

"(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state. * * *"

In turn, R.C. 2743.51(L) defines "victim" as follows:

"(L) 'Victim' means a person who suffers personal injury or death as a result of any of the following:

"(1) *Criminally injurious conduct;*

"(2) The good faith effort of any person to prevent *criminally injurious conduct;*

"(3) The good faith effort of any person to apprehend a person suspected of engaging in *criminally injurious conduct."* (Emphasis added.)

Thus, a "victim" may be one other than the direct object of criminally injurious conduct. And while R.C. 2743.51(L)(2) and (3) have been applied, most often, to law enforcement officers injured in the line of duty, it is clear from the plain language of the statute that "any person" may be a victim as the result of a "good faith effort" to either "prevent criminally injurious conduct" or "apprehend a person suspected of engaging in criminally injurious conduct." See R.C. 2743.51(L)(2) and (3).

In the present claim, the single commissioner denied the applicant's claim because the commissioner found that no criminally injurious conduct had occurred. Specifically, the single commissioner stated the following:

" * * * the evidence in the claim file is insufficient to allow a factual determination that the juveniles' actions [tearing down a gate and throwing rocks and

stones at the applicant's house and/or the occupants of said house] constituted felonious conduct, or that they intentionally subjected the applicant or her family to serious physical harm." *In re Buxsel* (Jan. 12, 1993), Ct. of Cl. No. V91–20760sc, unreported.

The single commissioner further found that "the apprehended juvenile's attempt to break free [did not constitute] either assault or resisting arrest." *Buxsel.*

At the hearing, the applicant's father, Ronald Buxsel, testified that he had recently returned home from open-heart surgery when the incident occurred. Mr. Buxsel stated he was sitting in the kitchen of his home having a cup of coffee at about 10:00 a.m. when he heard a loud noise and breaking glass. Mr. Buxsel then got up and went out onto the porch to investigate. Mr. Buxsel related that at that time he saw three youths throwing large projectiles at his home, breaking a window and causing serious damage to the aluminum or vinyl siding. Mr. Buxsel stated that the youths had also broken down the gate that secures the entrance to his property.

Mr. Buxsel then related that he told his daughter to see what was going on as he was too weak to go outside. At that time, Teresa Buxsel exited through a side door and came upon the youths as they were throwing objects at the house. When the youths saw Teresa Buxsel, they fled the area. However, Teresa was able to apprehend one of the youths. Mr. Buxsel testified that he saw his daughter, Teresa Buxsel, apprehend and detain one of the youths who had been vandalizing his home. Mr. Buxsel further testified that Teresa was returning to the porch with the young man to hold him there until the police arrived when the youth became agitated—obviously at the mention that the police were on their way—and pulled away from her. In so doing, the youth caused Teresa to fall down an incline upon which the property rests and injure herself severely. As a result of the youth's conduct, Teresa suffered an ankle fracture and her foot was broken in three places.

Teresa Buxsel also testified before the panel; she gave essentially the same account of the incident as her father. Teresa testified that she heard loud noises and went out the side door to investigate. When she got outside, Teresa saw three kids throwing objects at her parent's house and gave chase. Teresa stated she caught one subject and grasped him by the wrist. Teresa then related she began walking the youth back to the house and he was relatively calm, but became agitated when he was told the police were coming. Teresa testified that the youth then yanked his arm away, causing her to fall down an incline and suffer the aforementioned injuries.

Teresa Buxsel further testified that vandalism was very common in their neighborhood and, usually, the police were unable to apprehend the youths who

were causing trouble. Teresa also stated that, although the offender got away from her, he was later apprehended by police after a neighbor identified him. When asked why none of the youths was ever prosecuted, Teresa stated that, unfortunately, the police never interviewed her in connection with this incident and only got the offender's side of the story. The applicant further stated she did not press charges because the youth's parents threatened to sue her for kidnapping.

■ From review of the file, with full consideration given to the evidence and oral argument presented at the hearing, this panel finds the applicant has met her burden of proving, by a preponderance of the evidence, she suffered personal injury as the result of criminally injurious conduct. The evidence establishes that the applicant, in good faith, apprehended a subject whom the applicant observed throwing large objects at her home and was seriously injured by the subject's forceful resistance while she attempted to detain him for arrest by law enforcement authorities. It is the opinion of this panel that the offender's conduct of throwing projectiles at the applicant's home (vandalism, R.C. 2909.05) and resisting applicant's lawful detainment (assault, R.C. 2903.13) posed a substantial threat of personal injury and was punishable by fine or imprisonment and as such constitutes criminally injurious conduct. Furthermore, the applicant sustained her injuries as a result of a "good faith effort * * * to prevent criminally injurious conduct" and "to apprehend a person suspected of engaging in criminally injurious conduct." See R.C. 2743.51(L)(2) and (3). Therefore, the applicant's objection and notice of appeal is well taken, and the January 12, 1993 decision of the single commissioner must be reversed.

*So ordered.*

WILLIAM A. CARROLL, STEVEN A. LARSON and DALE A. THOMPSON, Commissioners, concur.